Good morning. May it please the court, Kendra Hutchinson of Federal Defenders for the Appellant in this matter, Mr. Patrick Sims. I request two minutes for rebuttal. Thank you. And I will not be arguing the second point of the brief and rest on our briefs unless the court has any questions. This is a parole search case. The court has clearly and recently instructed that a parole search that is not reasonably related to a parole officer's duties if it is the product of intentionally false, nonexistent, or harassing police tips. Unfortunately, the district court here failed to appreciate or apply this law. Can I ask, I found the basis for false, and I found the basis for harassing. Where's the nonexistent come from? What case is that? I think that comes from Ray's, Your Honor. I'll look at it. Yeah, I think it's the footnote. I believe it's footnote 7, but I can look that up. I'll look at it again. So I apologize. This is going to feel very much like Journalism 101, but I'm interested in the what. So the what is, and I guess the who, is it that Ms. Dot, or Parole Officer Dot, was the one that lied? Or was it that Officer Zach was the one that lied? Or did one of them mislead the other? I felt like the brief was not always linear in that, and if you could just lay out what your theory is. Thank you for asking this so directly, Your Honor, because I think it gets to what is exactly the problem with this case. The district court did not issue findings that clarified these contentions. Defense counsel brought these facts. These came up months later. The prosecution laudably brought forward this tip, and we commend them for that. But the defense brought this to the attention of the district court, and the district court found that there was a factual dispute that Your Honor is pointing to here, but did not resolve that dispute, said that, I do not need to resolve that because it is undisputed that a tip was given. And so it is not clear. You're right, Your Honor. We do prevaricate in many ways on what happened here because we don't actually know. There is no finding for this court. Well, isn't it the fact that, I mean, a parole search could be reasonably – could be justified and reasonably related to the needs of parole, whether the tip came from a community person or from an informant? That is true, Your Honor, but the – So you're really relying on the idea that – which we've stated, that a Fourth Amendment violation may take place if there's a law enforcement officer has intentionally provided false information to a parole officer in order to provoke a search. Or if it's harassing or if it's nonexistent. Yes. Yes. But what's the evidence of that, other than the fact that there was a discrepancy that emerged? Yes. And just a – I want – I very much want my Chief's question answered, but is it Dott or is it Zach? Like, who was the one that provided the false information? I think we don't know that here, Your Honor. I mean, Dott – so at the initial suppression hearing – and I'd like to come back to what Your Honor says, but at the initial suppression hearing, parole officer Dott was the only one who testified. And she testified that she heard from Zach, the NYPD officer, that there was a civilian complainant who had personally experienced or witnessed, you know, this brandishing and harassment, right? And so that is what she – that's what she based her decision to make the search on. This is what the court at that time, Your Honor, found was reasonably related to her parole duties when she initiated the search along with her supervisor. Later, months later, the government disclosed that, in fact, there was a confidential informant who gave this tip. And if you read the text that the government turned over that was a part of the – Okay. But you're not making a distinction between whether or not it was a confidential informant or whether or not it was a community member. You're trying to suggest that it either didn't exist or it was done for harassing. Is that right? What? It doesn't turn on whether or not it was a CI or a community member or even if they're not one and the same thing. Is that correct? Yeah. Well, I think the problem is, is that what Dott testified at the initial hearing we know is not true. It is not true. So either she lied or somebody lied to her or she was mistaken in some way. Well, we have more information and some of it is sealed, so I want to be very careful about – we do know we have some evidence of what the communication was between Zach and Dott. There are text messages. So are we speculating about what it was, the information? I mean, we know, don't we, that it was a confidential informant. And I thought the district court later looking at it said it's possible she forgot whether it was a community source or a confidential informant because she didn't have her notes, she didn't save the text messages on her phone. So it's not as if the court said, well, there's a real problem here, but I'm going to just ignore it. There's a little bit more evidence about when you have text messages of the communication, there's something for the it was a community source or that's what she was told when she initially testified, but later it turns out it was a CI. But that doesn't change the fact that the defendant knew this, by the way, chose not to perhaps pursue it at trial, perhaps for strategic reasons, but that is not – it's not as if there's a void entirely in what the communications were back in the time when they were relevant. Okay. So your Honor's brought up a lot of points. And so first of all, yes, you're absolutely right. There is a text – there are text messages that were turned over. They're part of the record in this case. Your Honor's can read them. We've read them. As far as I know, there was no representation from either party that that is the extent of the communications between – that is the full extent of the communications between the two officers, the parole officer and the police officer. You know, we don't know that because the district court did not make that finding, number one. And the district court, as I understand it, said, for now, I'm not going to change my ruling, but I'm going to leave that open for you to pursue it at trial. No one pursued it at trial, correct? And so to get back to what the second part – the judge did say – the judge did not say, oh, you know, I make this finding. The judge says precisely what she told is certainly disputed. But I don't believe I have to – I don't think I have to rule on that, right? And then in terms of this issue of whether the defense had an obligation to develop this at trial, Your Honor, you know, number one, the government had – had represented that it would be calling the police officer, right? So the defense had already had an opportunity to cross-examine the parole officer, right? And now – now, there's something untrue. I'm sorry. Wasn't the defense counsel, though, part of – joined the court in kind of beating up the government about saying, wait a minute, I thought we were stipulating that this, you know, came in. We were saying that they could be there for – I'm wondering if one could reasonably read that that strategy was abandoned. I'll tell you why this is not strategy. The government did not call the police officer. There was no police officer there. I thought the government did not call the police officer because the judge and the defense counsel both said, why are you doing that? We don't need them to get it in. We're just going to say that they were searching. How they got there to search is what's going to be at issue. Maybe I'm misreading it, but if you could tell me where I should look to – to not – I think they're going to get up here and say it was abandoned. So if you could tell me where in the record I should look to to not have that interpretation, I'd appreciate it. If Your Honor would permit me, I will – I will spend my adversary's time to look through the record to find those precise appendix sites so that I can get this right for Your Honor. Great. But I – I just want to bring us back. You know, we are arguing about what happened at trial, but this is a suppression motion. This evidence should not have gone before the jury and the defense – or that is a defense contention, and the defense is entitled to have that ruled on – The evidence didn't go before the jury. That's the point. There was a motion to suppress, and then new evidence came out just before trial, the text messages. The defense raised the issue of suppression again. The court revisited it and said, you know, maybe something will come up that will change my mind, but for the time being, I'm not granting the motion to suppress. So that's the record here. And now, it may be very good strategic reasons that the defense didn't want to bring in those text messages, and – and that's fine, but it seems to me you can't have it both ways. Your Honor, the evidence that we're seeking to suppress is not text messages or – or communications. It's a guns. This – there would not have been a trial had the court – Right. Had the court, you know, correctly – But you're seeking to suppress it based on what information the government or, in this case, not the government, the parole officer used to go in the house when they found the guns. Your Honor, I'm unaware of any law that requires a defense attorney to – to litigate the suppression issues at trial. I understand that that would have – you know, that that would have been great if the defense could have – could have, you know, fleshed out this record even more. But the problem here is that the district court did not flesh out the record. It was the district court – Well, I think Rule 12 – I mean, generally, the motion to suppress is a pretrial ruling, but with good cause, it doesn't have to be. Yeah. And so she made a pretrial ruling. Something happened while a jury was about to be called. So are you saying it wasn't within her discretion to go forward as she did? I mean, sir, you know, we're not – we're not complaining about going forward with the trial. We are complaining, in fact – and in many ways, if you really get down to brass tacks here, Your Honor, we're complaining about the court's legal error in denying this without making the findings that are required. I would point this Court to Braggs, which I think is really an important case here because it is almost squarely on point. In that case, the government had – or rather, the officers involved had differing rationales. They had one rational in the morning, one rational later, and one rational at trial. Now, this Court affirmed the denial of suppression there, but it – the precise reason was, was because in footnote 5, however, because the magistrate judge who presided over the evidentiary hearing found the parole officer's testimony regarding the anonymous tip, which was the third rationale, to be, quote, wholly credible, we declined to reinterpret the evidence as Braggs supposes. So what we have here is a failure to appreciate this part of Braggs, Your Honor. And the Court – honestly, we would not be here if the Court had just said, I find that there was a confidential informant, because, quite frankly, I would be here on clear error review with, you know, with Your Honors. I would say that this was a factual – I'd have to be, you know, disputing that as a factual finding. There are no factual findings here. There's nothing – there's nothing – you know, the only factual finding is that a tip was given. That's it. And we're not – we're not disputing that there was a tip given, really. So, you know, that is what we're asking for here. And, you know, we've asked for a sort of a broad remedy of reversal and remand. You know, I suppose this would be – this could be a case where the Court could remand for additional findings that should have been made in the first place. I mean, this might be an appropriate case for that. We didn't suggest this, and the government really hasn't really brought that up, but that might be the right thing to do in this instance, Your Honor, and settle all of these swirling questions that we have. Thank you very much. You deserve rebuttal. Good morning. May it please the Court. My name is Gilbert Rhyne. I'm an Assistant United States Attorney in the Eastern District of New York, and I represented the government before the district court. The district court properly denied the appellant's motion for reconsideration with leave to renew and did not abuse its discretion. Appellant moved to reopen a suppression hearing on the literal eve of trial in this case, where – where after hours, the parties appeared before the district judge, and the trial was disclosed again the next morning with opening statements. All the jurors had already been – had already been sworn. So the question in this case is whether or not the district court's decision can be located within the permissible – a range of permissible decisions, and the answer to that question is almost certainly yes. When did the defense get the – the information about the confidential informant? When did they get it, you ask? So the government had disclosed in its GILEO letter – I think it was about a month before – the fact that there had been information from the confidential informant that had formed the basis of the case. The information about the text messages was – was provided the date before jury selection was supposed to begin. I believe jury selection was on a Monday. It was provided on a Friday. But there was ample time, obviously, for this to be raised. It was not addressed until the night before jury selection. And the government's position is that it was certainly reasonable for the district judge, given the timing and the circumstances with which the court was faced, the fact that there were jurors who were going to be appearing the next morning and the jury selection commenced, to say, I'm not going to – to handle this issue now. This is something that I will let counsel develop further during trial through the questioning of witnesses, both in the presence of the jury and outside the presence of the jury. And counsel can raise this issue after trial, if appropriate. It was just never done. And that certainly cannot equate – And the argument seems to be that the – that there were findings of fact that needed to be made that were not made. Why isn't that correct? Well, because the request here and a request for further findings of fact is just based on speculation. Speculation that the – that the information provided by the NYPD was only intended to harass the defendants. Well, I mean, it wasn't – I mean, is speculation a bit hard, considering there was an actual inconsistency and there was testimony that, you know, could not be true with what other records came in later? The fact is that the ultimate decision that the court had to make at the suppression hearing was whether or not the parole search was reasonably related to the parole officer's duties. And as the district judge said in considering this motion to reconsider, there is no dispute about the fact that there was information provided to the NYPD that the – I'm sorry, provided by the NYPD to parole. Okay. But that can't be – it can't be just that there's an information, right? Because then we wouldn't have the Braggs idea about you can't be trying to harass people and you can't be making things up and that sort of thing. So there's got to be some limit. Well, I would say a few things. One, there – in this case, it wasn't just that – this case is actually not Braggs. It's actually on a much better footing than Braggs. In Braggs, there was this anonymous tip that was provided by the police to parole. Here, it wasn't an anonymous tip. And in addition to just there being a tip, there was a video that was provided by the NYPD. But that's not the – the dispute I understand your colleague on the other side to be making is that there needed to be factual findings to make sure that it was not – the tip did not materialize because of harassment or because of something – someone trying to be misleading or providing false information. So why isn't there a requirement for providing that kind of factual clarity? In here, the – there can be no suggestion that the tip materialized because there was – there was additional information provided other than just a tip. There was this video that was provided. There was a phone number. Which is kind of persuasive, right? Yes. Which has done enough on its own. Well, the court certainly considered that. And in addition, Braggs talks about the fact of a tip being wholly made up. Here, there's no suggestion that the tip was wholly made up. In fact – But again, the argument that your colleague would be making is that we do not know that it was not wholly made up. We do not know that it was not done for the purpose of harassing. What we do know is that a person who wields a lot of authority said something that we know isn't true. And we don't know why it wasn't true, whether they were confused, whether they misunderstood. But it's not true. And we know that it would be impermissible if it were done because it either didn't – because it was harassing or it was done with the intent to being false. Your Honor, I would say that it's not that Parole Officer Dotz said something that was not true. She did receive a tip from the NYPD, and that tip did lead to the parole search. The question is – But the person about the brandishing and that somebody else was being threatened and all that other stuff? Well, the decision for the court to make at the suppression hearing was whether or not the search was reasonably related to the parole officer's duties. And the search was reasonably related because the officer had been provided with information that the defendant did, in fact, have a firearm. Now – But again, if it were done – that's not the end of the game, right? It can't be done to harass somebody or – I mean – or if it's not true. Like, the fact that you turned up a gun afterwards doesn't immunize the fact that in the beginning it has to be reasonably related. And we have case law that says something done to harass somebody or something that is not true is not reasonably related. The – so what the – what Breggs says is that it's if it's wholly made up. However, the subjective – And I didn't say that we do not know that it wasn't wholly made up. So that is why I'm asking, was there an obligation on the part of the district court to specifically say, I am finding that it was not wholly made up? I think the answer is no. And the question here is whether or not it was an abuse of discretion. But didn't – didn't the court actually find that it was not wholly made up when the court said – That's what I thought. If anything comes out at trial that changes the picture, you can argue that if there's a conviction. But at this point in time – and this is after having the text messages – it seems it's undisputed that she, Dots, understood that an informant, someone, whether that's a community complainant or an informant, said that he had a gun. Precisely what she was told is certainly disputed. But it's undisputed that she was told that the defendant had a gun. And the court had the text messages. So I don't think – the court says – so I don't think that there's a basis to on the search. So the court made the factual premise necessary that her information that he had a gun was sound. So I'm struggling to understand what the factual dispute was that would undermine the court's finding. Yes, Your Honor. And I agree with Your Honor. That is what the district court said. That the district court was very clear that there was no dispute that the information had been provided to the parole officer by the NYPD. The only question was maybe the identity of who had provided the information. But the fact that the information had been provided itself was not in dispute. Is that because the court made a finding that whether it's an informant, a confidential informant who's paid, presumably in this case, or someone or a community source, that either one is sufficient to support a search? Yes. That is right. That's what the court had said at the time of the suppression hearing's decision. And also what the court said in denying what leads to renew the application for reconsideration. I think it is also worth noting – and I'll have only a little bit of time left – that the subjective intention of the police officer is actually not something that is to be considered. The court has been very clear, the law is very clear, that it's an objective inquiry. So whether or not – so the fact remains, the question is whether there was a tip in the first place, not why the officers wanted to do a search or anything like that. That does not factor into the analysis in this case. Wait a minute. You're not – you're not suggesting that there are no limits, that the – that – again, you're not undermining the case law that suggests that it can't be done to be false or it can't be harassing? Certainly the government would agree that if a tip had been wholly made up and was done – Which won't agree to harassing? You don't think our law doesn't preclude harassing done for the purpose of harassing? Well, in Ren v. United States, the Supreme Court was clear that the pretext – I'm sorry. I just want – this is actually – the government's position is that a tip done to harass a parolee would be acceptable? If the information is valid, if it is a true tip, if it is genuine, if there really was information that the defendant did in fact have a gun, then the subjective parole is not part of this inquiry. Because the inquiry, again, and under this circumstance, is only whether doing the search by the parole officer is reasonably related to the parole officer's duties. So – so that's why – that is the standard that this Court announced in Breggs. And there's no further inquiry as to why the tip might have been pressed by the NYPD. And so it's the government's position that the Court was well within its discretion. It was certainly within the range of permissible decisions for the Court to decline to address this issue on the literal eve of trial to give counsel the opportunity to further develop the record. And counsel just did not do that. And so for all these reasons, the government requests that the decision of the district court be affirmed. We'll hear from both. Your Honor. Your Honor, I was not able in this limited time while I was listening to find the appendix sites. I would be happy to file a letter this afternoon if that would be – if that would assist, Your Honor. Thank you. That's fine. Just one page. I will. I will not. I will not re-argue the issue. I understand. And you can make a reply with a one-page a week from today. I just want to assist Your Honors with this. I appreciate it. Thank you. Just – I just wanted to address this sort of issue of speculation that Judge Pettis that you – that you sort of brought it up. The problem is, is that, you know, the government is saying that it was speculative. It was the government who turned it over, as Your Honor pointed out. The government turned this over. There was hard evidence. This was not speculative. The speculation could be put to rest with findings. That is all we're asking for here. A confident – And the court said, based – at this point in time, based on what I have, I'm making a finding that there's a dispute as to what precisely she was told may have been told. But the court makes a finding that it's undisputed that she was told he had a gun, whether it was from a C.I. or a complainant. Why isn't that enough? What's the dispute here? Judge Kahn, thank you for asking me this, because I really wanted to speak to you and address these questions that you have, because I think they're very important here. We do not disagree that a confidential informant tip could lead to a valid parole search. We have no problem with that. We understand it. The problem here is that there are – there are discrepancies, and there is the possibility of harassment or of falsity on the part of some officer involved here. This Court has been very – Harassment by whom? It could be a police officer. It could be a parole officer. We're not sure. I think in Bragg's, this Court was – But harassment by whom against whom? This Court was concerned in Bragg's by police officers. So NYPD officer harassment that flows into a tip given to a parole officer that leads to a parole search. Harassment, police officers harassing parole officers to conduct searches? Police officers harassing defendants by giving tips to parole officers. But that's not the issue here, is it? When the Court has concrete evidence before it in terms of pictures – I mean, I don't want to get into a description about what's in those text messages, but I saw them. This isn't – and there was a video provided of – Now, the parole officer wasn't sure it was the defendant. I get that. But this isn't – we're not talking about that level of evidence like in Bragg's, are we? No, I think what we need here, Your Honor, are findings about who said what to whom and when that happened. I mean, I think that's what we're looking for here. And if it ultimately turns out that it's a CI and a proper tip and, you know, this is a credible CI, I mean, I think we're stuck, right? But, you know, again, I appreciate Your Honor's point, and I think that that could be resolved by findings here. In case the Court has any more questions? No? Thank you very much. I appreciate it. Thank you, both. Well argued on both sides. That is the final case on the calendar for argument today, so I will ask the Clerk to adjourn the Court. Court is adjourned.